man or his character as a citizen." "A question which is alike degrading to answer or decline to answer, should never be put, unless, in the judgment of the court, it is likely to promote the ends of justice. A rule which would license indiscriminate assaults on private character under the forms of law would contribute little to the development of truth, and still less to the furtherance of justice." "None of the decisions tend to sustain the proposition that the exclusion of inquiries as to the particular transactions, wholly irrelevant to the issue, for the purpose of degrading the witness, is cause for reversal by any appellate tribunal."

While this question has seemingly been one where diverse views have been held by judicial writers, the weight of the authorities has clearly established the rule that it is discretionary with the trial court whether inquiries tending to disgrace a witness shall be excluded or admitted, unless the evidence would bear directly upon the issue. Lohman v. People, 1 N. Y. 380–385; Greton v. Smith, 33 N. Y. 245, affirming 1 Daly, 380; La Beau v. People, 34 N. Y. 223, affirming 6 Parker, Cr. R. 371; Shepard v. Parker, 36 N. Y. 517; Southworth v. Bennett, 58 N. Y. 659; People v. Casey, 72 N. Y. 393; People v. Brown, Id. 571; People v. Crapo, 76 N. Y. 288.

The appellant claims that the trial court did not base its ruling upon the discretionary powers vested in the court, but upon other grounds. We do not so understand the record. In any event, we ought not to reverse upon a correct ruling because founded upon a wrong reason, unless possibly in a case where the grounds given for the ruling could be seen to have misled a party to his injury. Marvin v. Insurance Co., 85 N. Y. 278.

We are of the opinion that the judgment and order should be affirmed, with costs. All concur.

---

(7 App. Div. 544)

PRATT v. DWELLING–HOUSE MUT. FIRE INS. CO. OF ORLEANS, NIAGARA, AND MONROE COUNTIES.

(Supreme Court, Appellate Division, Fourth Department. June 17, 1896.)

MUTUAL FIRE INSURANCE—ASSETS.

> Laws 1880, c. 362, § 7, as amended by Laws 1881, c. 171, providing that every person insured in a mutual fire insurance company shall give his contract to pay his "pro rata share" of all losses, does not authorize an assessment against the solvent members of the company to pay the deficiency caused by the nonpayment of assessments by insolvent members. Ward, J., dissenting.

Appeal from special term, Orleans county.

Action by George L. Pratt against the Dwelling-House Mutual Fire Insurance Company of Orleans, Niagara, and Monroe Counties, New York, on a policy of insurance. Judgment was rendered in favor of plaintiff, and execution thereon returned unsatisfied. Afterwards a receiver of defendant was appointed. The receiver levied an assessment on the members of defendant in order to pay plaintiff's claim, but the amount so raised was insufficient, and he now applies to the court for instructions as to whether a second assessment should be levied. A referee was appointed to report

on such question, and he reported that a second assessment should be made. From an order denying a motion to confirm said report, plaintiff appeals. Affirmed.

The defendant was a mutual insurance company, organized under chapter 362, Laws 1880, as amended by chapter 171, Laws 1881. July 27, 1892, the plaintiff recovered a judgment against defendant, on account of loss by fire, covered by a policy of insurance issued by defendant for the sum of $2,601.30 damages and $800.94 costs and disbursements. An execution was issued thereon and returned wholly unsatisfied. Thereafter an action was instituted for the appointment of a receiver of the defendant corporation, and judgment obtained appointing a receiver, who duly qualified, and is still acting as such. The company had no assets, and the only person having a claim against the company is this plaintiff. The only mode of paying plaintiff's judgment was by assessment of the members. The court, upon application on behalf of plaintiff, granted an order allowing the receiver to make an assessment upon the members of said corporation. Said receiver made such assessment, and the same would have been sufficient to pay said judgment, expenses, and fees had all the persons assessed paid their assessments. This was not done, and the receiver has paid on such judgment the sum of $2,200, leaving a balance unpaid of about $1,000. The plaintiff again applied for an order that the receiver make a reassessment upon the solvent members of defendant to pay this deficiency. It was claimed that some of the members assessed were insolvent, that some claimed to have been assessed erroneously, and some that they were not members of the defendant at the time of the loss by fire, and therefore the assessments could not be collected in full. Upon the application a reference was ordered, and the referee required to take proofs and report to the court on the propriety and legality of making a reassessment against the members of the company who have already paid an assessment for the purpose of paying said claim against the company. The referee reported in favor of such reassessment. The court refused to confirm the referee's report, and denied the application for the order permitting receiver to make such reassessment, and from that order this appeal was taken. The receiver opposes the application, and alleges that there are no assets in his hands as such receiver, and demands that, if the receiver be ordered to make a second assessment, plaintiff be required to indemnify the receiver for all costs and expenses he may incur in an attempt to enforce such an assessment, if one shall be ordered.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, WARD, and GREEN, JJ.

John J. Ryan, for appellant.
Edmund L. Pitts, for respondent receiver.

GREEN, J. The defendant was organized as a mutual insurance company by virtue of chapter 362 of the Laws of 1880, as amended by chapter 171 of the Laws of 1881. By section 7 of that act it is provided that:

"Every person * * * so insured shall give his contract or agreement, binding him, her or them, or assigns, to pay their pro rata share to the company of all losses or damages, caused by fire or lightning, which may be sustained by any member or members thereof. He, she, it or they, shall also pay such percentage in lawful money, and such reasonable sum for policies and expenses and within such time as may be required by the by-laws of said company."

It is over the construction of this section that the main contention on this appeal arises. The appellant insists that this provision of the statute should be construed to authorize the company or its receiver to assess the solvent members of the company for the

deficiency caused by nonpayment of assessments by insolvent members. The words of the statute are direct, plain, and unambiguous. A literal and unrestricted interpretation preserves the plain, paramount intention of the lawmakers clearly expressed by the statute. The title of the act under which this company is organized is, "An act to provide for the formation of county and town co-operative insurance companies," indicating at the outset that those who organized themselves into a corporation under the act were to operate jointly and together to the same end. It is provided by the statute that every person who becomes a member of the corporation shall pay his pro rata share to the company of all losses or damages caused by fire or lightning which may be sustained by any member or members thereof. It surely would be a strained construction to say that it was intended by the use of these words to bind each member of the company to the payment of an entire loss, if all other members should prove to be insolvent. If it were so intended, the words "pro rata"—that is, a distribution proportionally—would not have been used in expressing the intention of the legislature. There is nothing in the statute which indicates that the members of a corporation organized thereunder were to indemnify those insured against loss by reason of the insolvency of a member, nor any obligation to pay the share or proportion of any other member who might become insolvent, or from any cause unable to pay his proportionate share of the loss. Under the construction contended for by appellant, a solvent member might be compelled to pay the entire loss, and also the expenses of the company or receiver in ascertaining and determining the question of the solvency or insolvency of the members. Will it be contended for a moment that any person would become a member of such a corporation knowing that he might become liable individually to pay all the losses occurring in the class where he was insured? If such were the intention expressed in this statute, and so expressed as to be clearly understood and comprehended, there would be no corporation organized under the law, for no sane man would venture upon so hazardous an undertaking. The regnant idea and intention of the statute are that each member of the company is to pay such proportion of the loss as the amount of his insurance bears to the whole amount of insurance in the same class. The liability of the member is not joint and several, but the principle is that each one contracts that, in respect of a certain sum or premium to be levied by a pro rata contribution on the amount for which he himself is insured, he will contribute to pay the contingency insured against, which may occur to any other member; but there is no participation by any member in respect of the liability of any other in regard to solvency, default, or dishonor. No member insures the solvency, the honesty, or good faith of other members. The question of contribution depends on the contract, and not on equitable considerations. A member undertakes no liability other than that of being able to contribute his share of the losses, and he never in any way made himself a party to the debt or obligation of any other member to a suffering member. Each member, foreseeing the contingency of himself

suffering a loss, took his chances with the rest. He knew when he executed his contract that, if he suffered loss by fire, his entire loss might not be made up to him, for the contract he and all other members executed provided that each member should pay only his proportionate share of such loss, and not the share of a defaulting or dishonest member. Each man agreed to pay, but his proportion was limited, and beyond that he could not be called upon. In my opinion, this is the true intent and meaning of this statute. Undoubtedly the receiver is authorized by statute to make the assessment, and to that end to make application to the court, setting out the necessity for levying assessments. ' The petition is ex parte, the order for making the assessment granted is an ex parte order, and the confirmation thereof ex parte. The members have no day in court, and no opportunity of ascertaining the nature and extent of the indebtedness, or the amount necessary to be assessed upon each member to pay the debts and liabilities of the company, and the expenses of the receiver in collecting the assessment. This was the course adopted in the proceeding upon making the assessment which has been made, and the course adopted in the present proceeding. The members received no notice of the hearing before the referee, who was appointed to take proof, and report, with his opinion as to whether a second assessment should be made. Such a course is obviously liable to abuse, and provocative of litigation. Notice of the hearing before the referee should have been given by him to all members sought to be assessed, and they should have been allowed to contest the application, and, if necessary, to except to the referee's report, and oppose its confirmation. One assessment has already been authorized by the court and made by the receiver for the purpose of paying the indebtedness of the company to plaintiff. There was a deficiency, caused, as plaintiff claims, by reason of the fact that some of those assessed as members contested the assessment, and were successful, some were dead, and some insolvent. The statement as to the cause of the deficiency is vague and indefinite. The record does not disclose how many members so assessed were insolvent, nor how many were dead, nor how many were successful in contesting the assessments. The former proceeding was instituted solely in the interest of plaintiff, who was a former officer of the company, and a member of the same. It was his duty in such proceeding to have informed the receiver and the court of the members of the association liable to assessment for the payment of his judgment, and, not having done so at that time, and not definitely informing the court upon this application, made by himself, as to who or how many of the members he claimed are liable to assessment, he ought not to complain if he is now precluded from compelling the receiver to make another assessment. The present proceeding is conducted by the plaintiff and against the opposition of the receiver, who insists that it is unauthorized, and, if ordered, will be resisted by the members assessed, on the ground that they have already been assessed their pro rata share, as provided by their contracts, and are under no further liability. This assessment should not be authorized by the court under these cir-

cumstances, unless it clearly appears that the members are under further liability under the statute and their contracts executed in accordance with the statute. We think this has not been shown, and that the order appealed from should be affirmed, with costs against the plaintiff.

All concur, except WARD, J., who dissents.